EDMUND H. WALKER *vs.* FRANCES O. BAILEY, administratrix.

Kennebec, 1875.—April 26, 1876.

*Trial.*

The judge at *nisi prius* has the right to inquire of the jury, when they return their verdict, upon which of several grounds taken by the prevailing party the verdict is based.

This power should be exercised sparingly and cautiously; and the best course is to put written interrogatories to the jury when the case is committed to them, and require written answers which may be affirmed as a special verdict.

Whether a statement as to the ground of the verdict made by the foreman only and not affirmed by the jury will be regarded in the consideration of a motion for a new trial, *quære.*

In this case there was a conflict of testimony upon both grounds taken in defense. *Held,* that the verdict of the jury based upon either ground must be regarded as final.

ON MOTION.

ASSUMPSIT for money had and received.   The plaintiff in 1868, and previously, was associated with Charles E. Bailey, the intestate, in purchasing and selling hay, Bailey assisting in the purchases in Maine, and the plaintiff either alone or as a member of the firm of himself and company, attending to the sales in Massachusetts, and sharing the profits with Bailey.

In 1868, one Kidder, of Norridgewock, received from Bailey $200 to aid him in finishing his haying, for which he gave to Bailey his note, and a mortgage on the 1867 crop of hay then pressed and lying in his barn for security.   Of this $200, one-half was furnished either by the plaintiff individually, or by the plaintiff

& Co. A few days after this the plaintiff purchased the pressed hay of Kidder for some $280, advanced him another $100, and gave his note for the balance which he at first declined to pay on the ground of the outstanding note and mortgage to Bailey, but was afterwards compelled to pay on an execution obtained by Kidder against him. There was evidence tending to show that Walker settled with Bailey for his share of the Kidder hay, and for his $100 advanced Kidder, that on settlement Bailey declined to deliver to Walker the Kidder note, which he retained to offset with Kidder, against a charge for hay consigned to him, Bailey, at Richmond, and for which he, Bailey, had received nothing. After Bailey's decease, his administratrix delivered to Kidder, the $200 note in exchange for the Richmond hay. Whereupon the plaintiff brought this suit for the $100, by him advanced, and for the $100 allowed the intestate in settlement for his advance to Kidder, for which $200 the intestate took Kidder's note and collected it. This suit the administratrix defended, on the ground that the action was not rightly brought, that if the plaintiff had any interest in the money loaned, it was that of a partner in the firm of E. H. Walker & Co., and, at any rate, the matter had been adjusted by Walker & Co., with the intestate as evidenced by their receipt in full to January 13, 1869. Upon the point of partnership, the evidence was conflicting, the plaintiff's brother, John S. Walker, testifying that he himself was formerly a partner of the plaintiff, but withdrew in 1865, long before these transactions, leaving his brother to carry on the business alone ; while one Wise, formerly clerk of the firm of Walker & Co., deposed that E. H. Walker continued a partner till March 1, 1869, when he withdrew, and the deponent took his place in the firm.

The presiding justice instructed the jury in conclusion as follows : "In the first place, was any of the money advanced by this plaintiff? If it was by the plaintiff, then you are to consider whether this money so advanced by him on joint account went into and became a part of the Kidder note. If it did, has it ever been accounted for ? If it did not, there is an end of the case ; it is for you to determine."

After the jury had returned into court with their verdict, and

before it was affirmed by the clerk, the presiding justice inquired of the foreman the grounds upon which they found for the defendant. The foreman replied, "we find for the defendant upon the ground that there was a firm existing at that time."

The defendant objected to the above answer of the jury being made part of the report.

The plaintiff moved that the verdict be set aside as against law and evidence.

*J. Baker*, for the plaintiff.

*W. P. Whitehouse*, and with him *E. F. Pillsbury*, for the defendant.

BARROWS, J.    Two grounds were taken in defense at the trial : I. That if the plaintiff had any interest in the money loaned to Kidder, it was only that of a partner in the firm of E. H. Walker & Co., and so the suit in his individual name was not maintainable : II. That, at all events, the matter had entered into the adjustment between E. H. Walker & Co. and the defendants' intestate, made January 13, 1869.

The jury were duly instructed that if there was a partnership, and the funds were advanced by the firm, the action was not maintainable. Their attention was carefully called to the evidence, tending to show that the money was advanced by the plaintiff alone ; and they were further directed, if they found that it was so advanced, to inquire whether it had ever been accounted for. The report states that "after the jury had returned into court with their verdict, and before it was affirmed by the clerk, the court inquired of the foreman, the grounds upon which they found for the defendant. The foreman replied, we find for the defendant upon the ground that there was a firm existing at that time." The foreman's answer makes the basis of the plaintiff's motion to set aside the verdict.

The defendant objected to having the foregoing answer of the foreman made part of the report.

We think the objection might well have been sustained. The foreman's answer makes no part of the record. It was not affirmed as a special finding. The attention of the jury generally does

not appear to have been called to the inquiry made by the judge or to the answer given by the foreman. The inquiry was addressed to the foreman, and at best we can only infer that the answer embodied what was uppermost in his mind. The case gives point to the remarks of Morton, J., in *Hannum* v. *Belchertown*, 19 Pick., 311, p. 313, touching the "wisdom of the rule which precludes jurors from giving evidence . . . of the reason and grounds of their determinations. These are different in different jurors, some being influenced by one reason or motive, and others by different ones. If we required perfect unanimity in their reasoning as well as in the results, agreements would become as rare as disagreements now are. Men of strong minds and sound judgments who are very sure to come to wise and just conclusions would, if called upon to state the grounds of their opinions, often give very insufficient and unsatisfactory reasons for their decisions."

Considerations of this nature doubtless led Gurney, B., at the trial of *Horner* v. *Watson*, 25 E. C. L. R., 595, to decline to hear the reasons upon which the jury based their verdict for the defendant, though some of the jury expressed the wish to state them. But in several courts of high respectability in this country, the practice has been different; and the cases cited by the plaintiff and those therein referred to may be regarded as establishing the power of the court, in its discretion, for the purpose of promoting justice or restraining useless litigation to inquire of the jury when they return a verdict upon which of several grounds taken by the parties the verdict is based, or the rule upon which they assessed the damages; though it is often said that this power is to be exercised very sparingly and with great caution.

There is a clear distinction between receiving the testimony of jurors touching these matters after they have been discharged from the consideration of the case, and exposed to the complaints, solicitation, and arguments of the defeated party, and receiving the answers of the same jurors under their official oaths before they have separated. But we think, in order to make these answers available for the furtherance of justice, and the prevention of useless litigation, that they should be made with due deliberation and a knowledge on the part of the jury, that the foreman speaks for all

on this topic, so that any mistake or omission may be corrected on the spot. Doubtless the best course where such knowledge on the part of the court seems desirable, is to submit distinct questions to the jury in the outset in writing so that their findings may be verified like a special verdict.

' It is however unnecessary now to determine whether any, (and, if any, what) weight should be given to an answer of the description here reported; for an examination of the testimony satisfies us that the plaintiff's motion cannot be sustained even upon the assumption that the grounds of the verdict were fully, as well as truly stated.

The plaintiff's counsel contends that the jury found nothing which was decisive of the case.

The foreman's answer must be construed in the light of the instruction given by the presiding judge. It cannot be expected, as the plaintiff seems to claim, that it should have the precision of a special plea.

The finding that "there was a firm existing at that time" includes a finding that such firm advanced the money, if it was advanced. The plaintiff's clerk produced as a witness by him testifies pointedly and positively to the existence of a firm composed of the plaintiff and his brother, at the time of the transaction out of which this suit grew—that the plaintiff's business with the defendant's intestate was conducted not in his own name, but in that of the firm, and that the money here claimed is included on the books of the firm with other moneys advanced or paid to Charles E. Bailey, the defendant's intestate; and the plaintiff, himself, in all his transactions with said Bailey, and in his letter to the defendant in which he first asserts this claim, uses the name of the firm. Though the plaintiff's brother and alleged partner now swears that he had retired previous to this transaction and had no interest in it, still it was for the jury to settle the conflict in the testimony offered by the plaintiff, and it is by no means certain that they erred.

Had the verdict been based on the other branch of the defense, in view of the testimony of Kidder, that the plaintiff, though specially and repeatedly requested by him to call Bailey's attention

to the matter when they were all three together, never did so ; in view of the proof of the general adjustment between plaintiff and deceased, and the receipt in full given to Bailey, January 13, 1869, and the non-production of the plaintiff's books, and the proof that a large balance due Bailey, at the time of his decease, was paid by the plaintiff to the defendant without any mention made of this claim during the protracted negotiations, it could not well be claimed that the evidence failed to justify the verdict.

We think the conflict of testimony upon both the grounds taken in defense was such that a verdict of the jury, based upon either, should be regarded as final.                    *Motion overruled.*

APPLETON, C. J., WALTON, DICKERSON, DANFORTH and LIBBEY, JJ., concurred.